May it please the Court, my name is David Nakashima. I am proud to represent approximately 38 apartment owners at a condominium project known as Discovery Bay here in Hawaii. As the Court is probably aware, um, excuse me Mr. Nakashima, I understand that, um, Larissa Herold is, my colleague is here. Will she be sharing time? Uh, she'll be giving me notes, but I'll be... Oh, okay, alright. Thank you. Uh, Your Honor, as Your Honor's know, this is an interesting case with a confluence of two fundamental legal principles. On the one hand, you have the law of contracts. On the other, you have constitutional law. That confluence comes to a point under the U.S. Constitution, Article 1, Section 10, which is commonly known as the Contract Clause. But if you look at the title, it is entitled, Powers Denied the States. And as the Court is aware, no state shall pass any law to impair the obligation of contracts. In this case, the problem is the District Court disregarded Supreme Court decisions in U.S. Trust. And this Court, the Ninth Circuit's decision in UH Professional Assembly in Southern California. Now your argument, of course, is that U.S. Trust wasn't followed in this case. What should the Court have done in light of U.S. Trust in this case? That's a very good point, Judge O'Scallion. There is a path that the Supreme Court in the Ninth Circuit has identified. It's called the Heightened Scrutiny Test, and it's a three-step test. What case are you citing for that? Primarily the UH Professional Assembly case, which is a Ninth Circuit case. U.S. Trust was the first case in 1978 by the U.S. Supreme Court that promulgated this three-step analysis. What happened here is the District Court put the cart before the horse by jumping to the Reserve Powers Doctrine and saying, well, this is a police power, end of story. We don't even need to do the three-step test in U.S. Trust. And the problem is, Your Honor, that the Reserve Powers Doctrine, a common law creation, was not applicable from the outset. I certainly agree that in the third step of the Heightened Scrutiny Test, the Court must look at the police powers. The District Court basically treated this contract as void ab initio, didn't it, for purposes of the condemnation? I'm not sure. I think what the Court did was just ignored the test and the contract. You simply went to it. But because of the Reserve Powers Doctrine. Correct. You are correct. Now, the cases cited by the District Court and by the city were all Supreme Court cases where there was a contractual obligation for the city or the county or whatever it would have to be to not exercise the eminent domain power, whereas in this case it was an agreement for the city to exercise the power under certain conditions. Is it your contention that the Supreme Court and other cases cited by the District Court are clearly distinguishable from the issue before it? Yes, Your Honor. And again, I go back to the U.S. Trust case as a seminal case. The second point is, as you're pointing out, I believe it's the Book of Job. Google the Lord giveth and the Lord can take it away. That's okay in the biblical sense, but not in the secular government. And what we have here under the Reserve Powers Doctrine is they're not contracting away or giving away any attributes of sovereignty. They're, in fact, enforcing it by promising in a contract that they drafted to use their eminent domain power. Counsel, when did the lessee's rights under Chapter 38 vest in this? You go back to day one when the lessee's decided they wanted to pursue the option that's allowed under the Hawaii statute. They make all the filings, the lower body approved it and recommended it to the full counsel, and then things went on hold. Do I have that roughly correct? You do, Your Honor. All right. When did their rights vest under the statute? And let me answer that question this way. There's two different rights. Their constitutional right they received the day they were born as a citizen in the United States. They had a contract right which vested upon execution by both the city and my clients. They had a contract, and at that point it was not conditional. Which is the point? I'm trying to pin down. Is it to give me a date or a document? The contracts were individual contracts signed by my contract with the city in 204, approximately six or seven months before the repeal. So you don't have a dead hand problem here? No, we don't. Was the contract subject to the approval of the city council? No, it wasn't, Your Honor. Mr. Kitoka's office drafted this contract, and if you look at the contract, all over the place it says this is legally binding, this is an enforceable contract. But it doesn't say in there subject to the approval of the city council or something like that? No. And there is a provision of force majeure, traditional force majeure. But interesting in that force majeure, it excludes acts by the city. Counsel, my understanding is that in Hawaii that the covenant of good faith and fair dealing in contracts applies. Is that correct? Yes, Your Honor. Would that apply in this contract, that the city would have an obligation, an implied covenant of good faith and fair dealing in dealing with a contractual obligation? Clearly, Your Honor. Well, there's a specific provision that says they'll use their best efforts, right? There is a best efforts clause, but I think in this case, again, if I could draw the court's attention back to the heightened scrutiny test, you know, there's a three-step process here, and the problem is the reserve power doesn't apply, and if I could respond this way, four different ways. Substantively, procedurally, practically, and analytically. Substantively, what the trial court did is just elevated the reserve powers doctrine to, you know, an absolute. In fact, if you look at the city's brief, page 20, they call the reserve powers an impenetrable barrier. Well, let me get back to the comment Judge Smith made. In other words, he noted, and you agreed that all of the cases that deal with the reserve power clause and the power of eminent domain have to do with an agreement by the government not to exercise the power, right? All those cases say, you know, they won't exercise the power of eminent domain, and the reserve powers cases say, well, you know, the government can't make such an agreement. Now, Judge Ezra says, well, it doesn't make any difference, you know, whether the government has agreed not to exercise it or to exercise it in a particular way, in a particular case. It's still an impingement upon the power of the city and county as to how it's going to exercise the power of eminent domain, and to that extent, it's still governed by the reserve powers clause. What's wrong with that argument? Well, as I mentioned, Isn't that the argument Judge Ezra makes? Correct, Your Honor. But let's take that argument to the logical extreme. As long as the city is exercising police powers or the right of eminent domain under the reserve powers doctrine as he analyzed it, the city can do anything. They have a contract, and they decide, we don't like it because it's not financially feasible. We're going to just obliterate it because we're going to exercise our eminent domain to condemn the land under this lease, or if we have a concession with a private concessionaire, we'll use some other police power, fire, welfare, and just get rid of that contract. And that's specifically what the Constitution prohibited, is where a government is trying to breach or escape its own obligations. Except for those cases governed by the reserve powers clause. No, I respectfully disagree, and it's included within the three-part test, when the third is, is it reasonable and necessary? When you look at the reserve powers, I think the courts would then balance, as the Ninth Circuit said in UH Professional Assembly, you balance the constitutional rights versus the powers of the government. But my point here, Your Honor, is Judge Ezra never went through that test. That's the problem. Had he gone through the test, as you noted from his comments and his findings, he said this ordinance was unfair, it was unnecessary, you know, it penalized my clients. But then he jumped to the reserve powers doctrine, and that's just the wrong process procedurally. I mentioned substantively, analytically, and practically. What is the remedy that you're pursuing at this point? Is it this essentially specific performance under the old statute, or is it strictly damages? Where are we in terms of remedy, assuming it goes back? Right. Right now I don't have any remedies, and I'm here to try to get some. But essentially we have several different claims. One, obviously, is just the constitutional impairment of contract. We have a 1983 claim. We have a breach of contract claim and specific performance, and essentially perhaps a damage claim. But you are asking for specific performance. Right, but I'm not sure, quite candidly, how far that goes. I haven't thought about it. Well, under the statute, I assume it goes so far as to have the city go forward and complete the condemnation so that your clients end up with a real estate interest in the condominium as opposed to simply leaseholding. But how can it go ahead with the condemnation when it's now passed an ordinance saying it no longer serves a public purpose? And that's a dilemma that the city will face if this case is reversed. So will you. Well, you still have damages. I still have damages. I still have the constitutional claims. But let me address you on the public purpose because that's another interesting issue. There's window dressing in the repeal ordinance that says there's changed circumstances. But in the grandfather clause itself, they allow condemnation actions that are ongoing to continue. So, obviously, there's still public purpose for those ongoing grandfather condemnation cases. They found, the city found, in this case, there was a public purpose. That was never rescinded or revoked. You know, we're in this kind of netherland because. Well, the city found it or the Department of Community Services found it? Department of Community Services, but that's the administrative arm of the city, found that there was public purpose and that was never going to be revoked. But the public purpose, you know, still exists for my clients on this particular project. Let's put aside the reserve powers argument just for a moment. I'm looking now at Exhibit A, Paragraph 3 of the contract that your client signed with the city. And the last sentence of that says, the buyer further assumes the risk of all changes in zoning, land use, ordinances, rules, regulations, and adverse governmental actions of any kind that might affect the property or the buyer's intended use of the property. What impact, if any, do you think that has on your contractual rights? Assuming for a moment, arguendo, that we agree with your position on the reserve powers. I'm sorry, is that in Exhibit A or the contract? This is Exhibit A to the contract. Oh, I'm sorry, it's 205 in the record. And it's just not the last paragraph, the next last paragraph, it's the last sentence of that. Well, certainly under this contract, the buyer, my clients are bound by all the conditions. Okay, so you're talking in terms of specific performance, it's a little goosey there, isn't it? Your words, not mine. Indeed. It assumes the risk, but that doesn't mean that we waive our constitutional rights. I understand that. What about this one? What about Paragraph 4A? Okay. Buyer's understanding, this agreement is expressly conditioned upon the city's successful acquisition of the property through the exercise of the power of eminent domain, and that failure of the city to acquire the property through no fault of the buyer will render this contract null and void without further action by either the buyer or the city. What impact, if any, does that have? That one I'm ready for. Okay. Tell me about it. None, Your Honor, because basic contract law, you cannot not fulfill a condition preceded in order to avoid your contractual obligation. So this is the implied covenant of good faith and fair dealing, in effect, right? In effect, Your Honor. But there's also case law that you can't crater your own deal by saying, gee, I can't meet this condition preceded I'm washing my hands. And that's what the city is doing. They're using their own legislation to escape their own life consequences. What did the city mean by this language? Why did they put that in there? You're talking about 4A? 4A and also the part of 3 that I quoted. I'm notówe didn't do any discovery on the contract because we never got there. But I'm sure you can ask Mr. Kiraoka. I will. Counsel, you're down to about under five minutes. Do you want to reserve oró If I could, Your Honor. You certainly may. Thank you, Your Honor. We'll hear from the city. The city and county, I should say. Good morning, Your Honors. May it please the court, my name is Don Kiraoka. I'm a deputy corporation counsel for the city and county of Honolulu. In this case, I'm a little frustrated now. And the reason I'm frustrated is because we're talking about the contract. We should never get to talking about the contract. The sovereign power of eminent domain cannot be contracted away. Counsel, isn't that a silly argument in this case? It is not a silly argument. Listen to me for a second. You have got statutes in California, in Hawaii, for example, revised statute 101-4 that grants eminent domain powers to public utilities, rail and transportation companies, telephone companies, power companies, water companies, oil and gas companies. The outrigger received a similar contract and it was recently acquired by the city. Are you saying that all of those contracts, all of those condemnations that took place since the time of the queen are void, ab initio, because of the violation of the reserve powers clause? Is that what you're saying? A contract that limits the ability of the city to exercise or to choose not to exercise. In any way? When it comes to eminent domain, the city always has... Counsel, that's not what the cases say. The cases that you cite are cases where the city or the county or the state, whatever it happens to be, contracted away the ability to use the power. That's not what we have here. This is a power, as this statute that I cited is, where the city has agreed that under certain circumstances, it will agree to use its own power to acquire the property for the purposes of the contract. So we shouldn't kid each other about the idea that this is a sacrosanct concept. I think the district court did that. But the reality is that the reserve power does not extend to all references to eminent domain. It never has. Certainly not. Can you cite me any case? I'd like to point this issue exactly on point to the U.S. trust case. Okay. Because in the U.S. trust case, there was an initial threshold inquiry to be made before you get into whether there was substantial impairment or not. And that initial threshold inquiry is whether the government has the ability in the first place to enter into an agreement that limits its power to act in the future. So this inquiry, and this is straight from U.S. trust, Your Honor, this inquiry requires a determination as to the state's power to create irrevocable contract rights rather than an inquiry into the purpose or reasonableness of the subsequent impairment. So your position is the city and county's position that the city and county may not enter into any contract with anybody that in any way inhibits or qualifies its use of the power of eminent domain. Is that your position? The city has unbridled discretion because a subsequent council, city council, cannot be shackled by the actions of a previous council. But that's a different issue here. That's a different issue because we have a threshold question, which is whether you can enter into the contract in the first place. Right. And I understand your position to be you cannot. Is that correct? And the district court's position. I understand that, but we're higher than the district court. So my question to you is, is that the position of the city and the county, that the city and the county may not under any circumstances enter into any contract that in any way limits, inhibits, qualifies its use of the power of eminent domain. Is that your position? First of all, yes. It is. It is the position of the city that city council alone, the legislative body of the city is the body that holds the power of eminent domain. That city council needs to find a public purpose. I understand that, and it did that before it repealed Chapter 38, didn't it? It did. A prior council found that it was in the public purpose to have leasehold conversion. Do you believe, counsel, that the implied covenant of good faith and fair dealing applies to contracts entered into by governmental bodies? Oh, it certainly does. Okay. So if it does, is it your position that since the previous council, with respect to these plaintiffs and appellants, entered into a contract, presumably both parties in good faith, said there was a public purpose involved here, and if we assume arguendo that there is no reserved powers problem here, are you saying that just because four months later the city council politically changes and wants to say there is no longer a public purpose, that it can do that willy-nilly without any consequences at all? The only consequences are as to when they were going to draw the line as to when condominiums are grandfathered in. As far as their right to determine, the city council's right to determine to exercise or not to exercise its power of eminent domain, that is sacrosanct here. And that is sacrosanct because if, in fact, a subsequent city council finds that there is no public purpose to leasehold conversion, they cannot in good conscience at any time thereafter find that there are exceptions to this, that there is a public purpose for Discovery Bay, there is a public purpose for this group of people, but in general there is not a public purpose. Once they have turned off the light on leasehold conversion by finding that there is no public purpose to leasehold conversion, there cannot be a restriction on that ability of the council to do that. A prior council enacted Chapter 38, and this court upheld it because it was a valid public purpose. But there can be no restriction on subsequent city councils to say that there was not. A day later? A day later. An hour later? A minute later, Your Honor. Okay, a minute later, and somebody enters a contract, and they rely on it in good faith, and they put their money out, and everybody advertises in the paper and says what a wonderful thing this is and how helpful it's going to be to the real estate market. You're saying that those people have no remedy if the city decides for whatever reason that it's going to pull the plug on the contract. For whatever reason has to be tied to a finding of no public purpose for leasehold conversion. You agree that there's no case that holds that the reserve powers doctrine applies to a contract in which the government agrees to exercise the power of the government as opposed to agreeing not to exercise it. There is no case with this particular fact as to having a reverse where the city actually contracted to exercise its power of eminent domain. So I agree with that. But I also agree with the district court in saying that that distinction is illusory. The district court specifically pointed out that sovereign right of eminent domain necessarily consists of the discretion to exercise that power in the manner the sovereign deems to be in the public best interest. Oh sure, sure, sure. That's true. But as Judge Smith tried to impress upon you, here the city agreed to exercise the power in a certain way. Now, there's nothing in the reserve powers doctrine that would void that kind of doctrine.  It has never been applied. But the reserve powers doctrine is all about the legislature, or in this case the council's ability to determine condemnation matters. No, no, no, no, no. If you read the language of the cases, all the cases say no. You know, you can't agree not to exercise that power because it belongs to the government. Right. That's what they say. Specifically, yes. But I'm saying that the power and policy behind those decisions is that— The policy says it's an attribute of the government and you cannot give it away. Correct. Well, and in this case it's not being given away. It's an exercise not to—well, it's an agreement— No, it's an agreement to exercise the power. Right. It's an agreement to exercise the power, and, in fact, the city council must be given the latitude to repeal that law. Because if we go— Not under the reserve powers doctrine. Under the— That's not what the reserve powers doctrine protects against. The preserve— It protects against giving away the power in the sense that you agree that you're not going to use the power. You, meaning the government. Right. But as the district court pointed out, a contract requiring the sovereign to exercise the power is just as limiting as a contract prohibiting from doing it. Because it's a limit upon authority. No, it's not. It's not as limiting. The reason it's not as limiting because even after it's exercised in this instance, for instance, and then, you know, a year later the city decides, well, we've got to have that Discovery Bay condo unit for a city hall. They can exercise the power there and take it back. Right. So it's not limiting itself. It's not like, you know, you're agreeing not to exercise it. Well, what is limiting about this is that it's forcing the council to exercise its power when it has, in fact, the complete discretion— It's forcing itself. The council agreed to do it. The council did not agree to do it. The council established Chapter 38. The city agreed to do it. That is true. A prior council did that. But there can be no limitation on a subsequent council to change the law. And there is— No, that's not what the reserve power doctrine says. Reserve power doctrine says you cannot give away the power in the sense that you agree not to ever exercise it. That's the limitation. It is true. That's the limit of the doctrine. Well, we have cited cases where the power of eminent domain was delegated, and in the middle of condemnation proceedings, the government pulled back that delegation. And in all of these cases, the courts have universally applied the reserve powers doctrine. The distinctions that the plaintiff, and I guess by these questions the court is trying to make, is artificial and of no substance because if any distinction can be made, it's the taking after the promising not to is a lot more egregious than promising to take the property and then not doing it. It's a lot more egregious to say we're not going to take it and then take it as compared to we'll take it but then we're changing the law so we can't take it anymore. Let me follow up on Judge Tashima's question here. Let's assume arguendo for just a moment here that the implied powers doctrine does not bar what we're talking about here. And let's take also that the one legislative body can't tie the hands of another legislative body, but it's the so-called dead hand issue. In this case, you had a chapter 38 enacted and then four months later the council changes its mind. So it's a relatively short period of time, probably mainly the same people on the council. It was many years ago. Chapter 38, in fact, was successful in converting thousands of condominium units from 1991. Okay, so it's a longer period of time. So then you've got a longer question about the dead hand issue. But my question is this. With what you've agreed to be the case, that the implied covenant of good faith and fair dealing applies here, do you agree that the city, in good faith, cannot take an action to destroy the ability of these property owners to get the benefit of their bargain by virtue of its own action? Do you agree with that? I agree with it to the extent if it destroyed contractual rights that were completely vested. For instance, if there was a final order of condemnation in any case, and then the city council says, hey, wait a minute, we're not going to go through with this. The city council would be embraced because there was a finality to it. There was a final order of condemnation. If in the realm and the range of activities, where did any rights vest? Okay, let's say for a hypothetical, and again, this is hypothetical. Let's say that each of the property owners paid the city $100,000 for this right, and the council changed its mind. Would there be any rights there, or it can just change its mind, doesn't matter what contract? It certainly can get their $100,000 back. Okay, so there is a contract. There was a contract pursuant to Chapter 38, but that contract was not a final contract. And that's why I'm frustrated, Your Honor, because we're talking about the contract again. But if you look at the contract… You don't think there was a contract? Excuse me? These weren't contracts? There were contracts under Chapter 38, but when Chapter 38 was repealed, then those contracts… So what happened to those contracts when Chapter 38 got repealed? The city council… You mentioned grandfather rights earlier in your presentation. Tell me how the grandfather rights work, and specifically, please answer that question. What happened to these contracts when 38 got repealed? The grandfather and the savings clause provided that those condominium units that had gone through the process to the point where the city council approved the resolution of condemnation, all of those units were grandfathered in because the city council had already spoken. And that was a logical and determinative factor as to when condominium units would be saved by the savings clause. So those were contracts? Those were contracts, and in fact were enforcers' contracts, but the city drew the line at its determination of a resolution of condemnation. So was this a condition subsequent? By in fact putting the line at condemnation resolution, they decided to honor those contracts that had gone that far because they had already made a finding of public purpose. They had already made a finding that conversion of these units satisfied a public purpose. Are you saying that the city was bound at that point, or was that an exercise of legislative grace? It was absolutely an exercise of legislative grace. It was legislative grace because they could have said that final order of condemnation is the only time that the rights under the contract vets. But because of legislative grace, they said if we had told you before that we found a public purpose, we'll stick to that representation. Isn't that exactly what we have here? These arrangements were entered into by the leaseholders and by the Department of Administration, whatever the city services are. That had already occurred. That had already occurred, but this court must acknowledge the power of condemnation and eminent domain in the city rests exclusively, solely with the legislative body, which is the city council. In fact, if the city council has not found a public purpose, there can be no condemnation. If Discovery Bay had come to them while they were considering the repeal of the law, Discovery Bay may very well, at the time of city council approval, they could have gotten a non-approval. That would have raised a mess. If I understood you correctly, that in my hypothetical, about the $100,000 payment for contract, that if the city had repealed Chapter 38, that those people could probably get their $100,000 back, right? I would guarantee it. And what was the legal basis for their getting that money back? Because at that point, the city was incapable of consummating the contract. Isn't that what the city has tried to do here, is to make it impossible? Well, now we're focusing on Discovery Bay. The whole process was thousands of condominium units were converted under this law, Chapter 38, which was upheld. There had to be a point in the repeal where those rights are cut off. Or else you can say, well, what about those that were thinking about entering into a contract? And in fact, Your Honor, in fact this may not be in the record, but there was a rush to contract once the community found out that the city wanted to repeal the law. There was a rush to contract. As a city considered using our mediation services, they're really good at this. And the reality is you've got a lot of people who feel greatly injured by what the city has done here. You are standing on the threshold of perhaps having a precedent that you may not like. And I wonder if the city might consider the wisdom of considering mediation for these people. I face the argument that the city council was unwise in the district court. Oh, I wouldn't suggest that they're unwise. Well, it was said they're unwise. I believe it's in the opinion. But the problem with this case, Your Honor, is that the city council found that there is no public purpose to leasehold conversion. And once that determination was made, they no longer can convert. It would be in bad conscience, Your Honor, if the city council said, well, we'll convert a few more. It's a matter of political will. If they knew that as a matter of law they were deemed to have breached a contract by taking voluntary action, volitional action to destroy the ability of these people to get that right, wouldn't that be compensable? That's your $100,000 back. It's maybe 30-something, I don't know, 40, 50-something people out of tens of thousands of people who have been subject to this law and those that are not, the law is no longer available to them. So you're saying de minimis, non curat lex? Is that your position? It's not a de minimis argument, Your Honor. It is, in fact, a public purpose argument. Thank you, Counselor. Your time has expired. We'll hear from Mr. Nakashima. You have some reserved time, Mr. Nakashima. Thank you, Your Honor. On a personal note, I respect Mr. Kitaoka. We're both graduates of the Richardson School of Law, although I'm a little older than he is. You're not any bigger than when you left here, are you? And you notice I waited until the end of my argument to make that point. But Mr. Kitaoka, with all due respect, it's a very dangerous proposition. Attributes of sovereignty does not give the city the blanket right to breach contracts or claim total immunity. That's what the contract clause is for. I would point out, chronologically, these contracts were signed in 2004 with this city, the department, but while the city council was there. It was only six months later that they said, change circumstances, no public purpose, we're going to repeal. So this idea that, you know, there's been a prior administration or prior city council that we're trying to negate is untrue. It was this city council when these contracts were signed. I would also ask to point out, as I mentioned in the opening, this is a well-trodden trail, starting with the U.S. Constitution contract clause the U.S. Supreme Court gave you. But if you look at the words of the U.S. Supreme Court, I believe it's an allied structural steel, quote, the contract clause must be understood to impose some limits upon the power of the state to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power. This court in UH Professional Assembly several years ago said, quote, on review, we balance the contractual rights of the individual against the essential attributes of sovereign power necessarily reserved by the states to safeguard the welfare of their citizens. There's a balancing that the Supreme Court and this court used under that three-step heightened scrutiny test, which the trial court, unfortunately in this case, ignored and refused to follow. Had it done so, the conclusion would have been evident. Just as those condemnation actions have continued, there is a small handful of U.S. citizens, my clients, that signed contracts that should have been allowed to proceed had the court applied the right test. Unfortunately, it did not. Thank you, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision, and the court will take its warning recess for 10 minutes.
judges: O'scannlain, Tashima, Smith